# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TERRI COWGILL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **CASE NO. 1:19-cv-02565-ADC** |
| **FIRST DATA TECHNOLOGIES, INC., and** ) | |
| **FISERV SOLUTIONS, LLC,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT FIRST DATA TECHNOLOGIES, INC.'S MOTION TO STRIKE PLAINTIFF'S EXHIBITS

1

602620083

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM IN SUPPORT OF DEFENDANT FIRST DATA  TECHNOLOGIES, INC.'S MOTION TO STRIKE PLAINTIFF'S EXHIBITS ........................................................... 1

I.       Introduction ................................................................................................... 5

II.      Plaintiff's Affidavit Should be Stricken Pursuant to the Sham-Affidavit Rule. ..... 5

III.     Exhibits 3, 11, 12, and 16 Should Be Stricken Because They Are Unauthenticated and Constitute Inadmissible Hearsay ......................................... 11

IV.      Exhibits 10, 13, 14, 15, and 17 Should Be Stricken Because They Are Unauthenticated and Inadmissible. ...................................................................... 14

CONCLUSION ................................................................................................................ 19

CERTIFICATE OF SERVICE ......................................................................................... 21

602620083

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Barwick v. Celotex Corp.*,
   736 F.2d 946 (4th Cir. 1984) ......................................................................6

*Blasic v. Chugach Support Servs., Inc.*,
   No. WDQ-04-4022, 2010 WL 3294353 (D. Md. Aug. 20, 2010) ...........................17

*Bookhultz v. Sears Authorized Hometown Stores, LLC*,
   No. CV CBD-16-2176, 2018 WL 1795338 (D. Md. Apr. 13, 2018)......................15

*Cephas v. Pepsi Bottling Grp., Inc.*,
   No. CIV. WMN-04-2269, 2005 WL 5168264 (D. Md. Dec. 6, 2005), *aff'd*,
   *Ford v. Ridgeden Success, Inc.*, 177 F. App'x 310 (4th Cir. 2006)......................6, 7

*CTB, Inc. v. Hog Slat, Inc.*,
   954 F.3d 647 (4th Cir. 2020) ......................................................................5

*Dawson v. Jetty Partners*,
   LLC, No. JKB-11-1129, 2012 WL 439672 (D. Md. Feb. 8, 2012).........................16

*Frazier v. Dep't of Juvenile Servs.*,
   No. CIV. JFM-10-843, 2011 WL 5592890, (D. Md. Nov. 15, 2011) .....................11

*Godbolt v. Trinity Prot. Svcs., Inc.*,
   No. GJH-14-3546, 2017 WL 2579020 (D. Md. June 12, 2017)..............................6

*It's My Party, Inc. v. Live Nation, Inc.*,
   No. CIV. JFM-09-547, 2012 WL 3655470 (D. Md. Aug. 23, 2012) ...............12, 13

*Jackson v. Consol. Coal Co., McElroy Mine*,
   NO. 93-1742, 1994 WL 89801 (4th Cir. Mar. 22, 1994).........................................7

*Jacobsen v. Towers Perrin Forster & Crosby, Inc.*,
   No. CIV.A.RDB-05-2983, 2008 WL 782477 (D. Md. Mar. 20, 2008)..................14

*Jimoh v. Charlotte-Mecklenburg Hous. P'ship, Inc.*,
   No. 3:08-CV-495-RJC-DCK, 2010 WL 1924480 (W.D.N.C. May 12, 2010),
   *aff'd*, 428 F. App'x 241 (4th Cir. 2011)......................................................17

*King v. Virginia Employment Comm'n*,
   No. 93-1619, 1994 WL 416439 (4th Cir. Aug. 10, 1994) ......................................7

*Kinser v. United Methodist Agency for the Retarded—W. N. Carolina, Inc.*,
   613 Fed. App'x 209 (4th Cir. 2015) ..............................................................6

3

*Latson v. Clarke*,
  346 F. Supp. 3d 831 (W.D. Va. 2018), *aff'd*, 794 F. App'x 266 (4th Cir. 2019) ....................11

*Lorraine v. Markel Am. Ins. Co.*,
  241 F.R.D. 534 (D. Md. 2007)...............................................................................................11

*Md. Highways Contractors Ass'n v. State of Md.*,
  933 F.2d 1246 (4th Cir. 1991) ...............................................................................................11

*Riggins v. SSC Yanceyville Operating Co.*,
  800 Fed. App'x 151 (4th Cir. 2020) .........................................................................................5

*Rodriguez v. Smithfield Packing Co.*,
  545 F. Supp. 2d 508 (D. Md. 2008)............................................................................14, 15, 16

*Ross v. Commc'ns Satellite Corp.*,
  759 F.2d 355 (4th Cir. 1985), *abrogated on other grounds* by *Price
  Waterhouse v. Hopkins*, 490 U.S. 228 (1989)........................................................................16

*Sherif v. Univ. of Maryland Med. Ctr.*,
  127 F. Supp. 3d 470 (D. Md. 2015) .......................................................................................14

*Sinclair Broadcast Group, Inc. v. Colour Basis,
  LLC*, No. CCB-14-2614, 2016 WL 3541204 (D. Md. June 29, 2016).............................12, 13

*Staton v. Dollar Tree, Inc.*,
  No. 2:08CV350, 2008 WL 11383389 (E.D. Va. Dec. 11, 2008).......................................17, 18

*Stetter v. Shalala*,
  13 F. App'x 79 (4th Cir. 2001)...............................................................................................18

*United States v. Cone*,
  714 F.3d 197 (4th Cir. 2013) .................................................................................................12

*United States v. MacDonald*,
  688 F.2d 224 (4th Cir. 1982) .................................................................................................15

**Rules**

Fed. R. Evid. 803(8)(C) ...............................................................................................................15

Fed. R. Evid. 805 .........................................................................................................................14

602620083

Defendant First Data Technologies, Inc. ("First Data") files this Memorandum of Law in support of its Motion to Strike Exhibits 1, 3, 10, 11, 12, 13, 14, 15, 16, and 17 (ECF Nos. 56-1, 56-3, 56-10, 56-11, 56-12, 56-13, 56-14, 56-15, 56-16 and 56-17) of Plaintiff Terri Cowgill's ("Plaintiff") opposition ("Opposition") to First Data's Motion for Summary Judgment ("Motion").

## I.      Introduction

Plaintiff submitted a number of exhibits in support of her Opposition, including (1) her own affidavit, (2) three e-mail strings, (3) medical records, and (4) five documents relating to two administrative agency proceedings.  First, Plaintiff's affidavit (Exhibit 1) should be stricken in its entirety pursuant to the sham-affidavit rule, as it presents Plaintiff's self-serving opinion without corroboration and contradicts Plaintiff's earlier deposition testimony.  Second, Plaintiff's e-mail exhibits (Exhibits 3, 11, and 12) and medical records (Exhibit 16) should be stricken because they are unauthenticated and constitute inadmissible hearsay.  Third, the administrative agency records attached to Plaintiff's Opposition (Exhibits 10, 13, 14, 15, and 17) should be stricken due to their limited probative value, prejudicial nature, and lack of authentication.

## II.     Plaintiff's Affidavit Should be Stricken Pursuant to the Sham-Affidavit Rule.

"It is a 'long-standing principle that a party against whom summary judgment is sought cannot create a jury issue by identifying discrepancies in [her] own account of the facts.'" *Riggins v. SSC Yanceyville Operating Co.*, 800 Fed. App'x 151, 159 (4th Cir. 2020) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 n.7 (4th Cir. 2001)).  In other words, "a party's self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment." *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020) (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004)).  Further, "[a]t the summary judgment stage, if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit pursuant to the sham-affidavit rule." *Kinser v. United Methodist Agency for the Retarded—W. N. Carolina, Inc.*,

5

613 Fed. App'x 209, 210 (4th Cir. 2015).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (citation omitted).

First, Plaintiff's affidavit should be stricken because it is riddled with Plaintiff's own self-serving, uncorroborated opinions.  Plaintiff openly presents her own unsubstantiated beliefs, stating: "I believe that the Final Warning was issued in order to intimidate me into abandoning my request for FMLA leave and ADA accommodations."  Pl.'s Aff. at ¶ 31.  Plaintiff further speculates: "I believe that First Data circumvented its own progressive discipline policy because I had mentioned that I would be recertifying my FMLA request at the beginning of my meeting with Ms. Rowe, and I believe that the original Final Warning was never actually removed from my file."  *Id.* at ¶ 51.  Finally, Plaintiff asserts: "I do not believe that I was terminated for my conduct on any phone call, but rather First Data misstated the events of those calls so that they could use them a[s] pretext for my termination."  *Id.* at ¶ 66.  Plaintiff's "conclusory and self-serving assessment[s]" cannot establish her claims.  *Cephas v. Pepsi Bottling Grp., Inc.*, No. CIV. WMN-04-2269, 2005 WL 5168264, at *2 (D. Md. Dec. 6, 2005), *aff'd, Ford v. Ridgeden Success, Inc.*, 177 F. App'x 310 (4th Cir. 2006).  Thus, they should be disregarded.

Second, Plaintiff's affidavit should be stricken because it conflicts in numerous respects with Plaintiff's earlier deposition testimony.  *See Godbolt v. Trinity Prot. Svcs., Inc.*, No. GJH-14-3546, 2017 WL 2579020, at *1 n.2 (D. Md. June 12, 2017) (declining to consider new, contradictory assertions raised in affidavit submitted with plaintiff's opposition to defendant's motion for summary judgment); *Cephas*, 2005 WL 5168264, at *3 (disregarding affidavit

602620083

submitted with plaintiff's opposition to motion for summary judgment where affidavit contradicted plaintiff's prior deposition testimony); *Jackson v. Consol. Coal Co., McElroy Mine*, NO. 93-1742, 1994 WL 89801, at *2 (4th Cir. Mar. 22, 1994) (affirming decision to disregard affidavit submitted with plaintiff's opposition to defendant's motion for summary judgment where affidavit conflicted with plaintiff's prior deposition testimony); *King v. Virginia Employment Comm'n*, No. 93-1619, 1994 WL 416439, at *3 (4th Cir. Aug. 10, 1994) (disregarding portion of affidavit plaintiff submitted in opposition to defendant's motion for summary judgment where plaintiff failed to mention crucial statements during her deposition).

In *Jackson*, the plaintiff's affidavit suggested that, after he was injured, his supervisor threatened to discharge him on multiple occasions. *Jackson*, 1994 WL 89801, at *2. The plaintiff argued that, although he failed to mention those threats at his deposition, the affidavit did not "conflict" with his earlier deposition testimony. *Id.* at *1. The court rejected the argument, noting that the plaintiff was asked on multiple occasions to identify the factual basis for his discriminatory discharge and yet failed to mention any threats. *Id.* at *2. Thus, the court found the statements in the affidavit clearly conflicted with his earlier deposition testimony, and the district court properly disregarded the affidavit. *Id.*

Similarly, in *King*, in opposition to her former employer's motion for summary judgment on her age discrimination claim, the plaintiff submitted an affidavit that stated her supervisor expressed her dislike for older workers. *King*, 1994 WL 416439, at *3. The defendant noted that the plaintiff failed to mention this statement despite being directly asked for such evidence at her deposition. *Id.* The plaintiff argued the affidavit did not contradict her earlier testimony because she previously testified that she simply could not recall every statement made by the defendant, but the court rejected such argument. The court reasoned that, because the plaintiff failed to

identify these crucial alleged statements at her deposition, to allow her to "reserve the right" to file a later affidavit in response to defendant's summary judgment motion—which affidavit would not be subject to cross-examination—"would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* at *4.

Here, similar to *Jackson* and *King*, the vast majority of the statements in Plaintiff's affidavit conflict with her earlier deposition testimony.   For example, Plaintiff's affidavit directly contradicts her deposition testimony about her alleged disability.  Plaintiff states in her affidavit: "To date, I am unable to engage in normal daily activities such as standing, sitting, lifting, reaching, sleeping, working, or performing manual tasks such as bending over or even washing myself without experiencing significant pain."  Pl.'s Aff. ¶ 6.  However, at Plaintiff's deposition, she indicated that back and neck pain "[s]ometimes" prevents her from doing certain activities like "sitting for long periods of time" or "bending over in [her] shower scrubbing it" without breaks, but that she "can still work.'"  *See* Transcript of Relevant Portions of Plaintiff's August 21, 2020 Deposition, attached hereto as Exhibit 1 ("Ex. 1"), 218:9–18.  Similarly, Plaintiff states in her affidavit: "This pain has caused me to be unable to sleep soundly and has affected my everyday life by limiting my ability to work, sit, or stand."  Pl.'s Aff. ¶ 7.  However, at her deposition, Plaintiff was directly asked if she believes she possesses "any physical condition that prevents [her] from working," and she responded: "Today? No. No, I get up and go to work every day."  Ex. 1, at 218:4–7.  Plaintiff further states in her affidavit that her "injury and the related pain are permanent."  Pl.'s Aff. ¶ 8.  Yet, at her deposition, Plaintiff plainly admitted that no medical professional has ever informed her that her impairment is permanent.  *Id.*, 191:17–192:3.

Plaintiff's affidavit further contradicts her deposition testimony with respect to Ms. Rowe's alleged unwillingness to accommodate Plaintiff's request to utilize her approved intermittent leave

under the Family and Medical Leave Act ("FMLA").  Specifically, Plaintiff states in her affidavit that Ms. Rowe "was unwilling to make any accommodation pursuant to [Plaintiff's] request."  Pl.'s Aff. ¶ 15.  Conversely, at her deposition, Plaintiff testified that Ms. Rowe unequivocally explained that Plaintiff should contact the Company's Workforce Management Department whenever she needed to take time off during the approved leave period, and the Company would adjust her schedule accordingly.  Ex. 1, 147:18–148:3; 150:20–151:4.  Moreover, Plaintiff testified at her deposition that she could not recall any instance in which she requested time off during the approved leave period but was denied by First Data, which undercuts any statement in her affidavit suggesting that First Data refused to accommodate her requests.  *Id.*, 164:9–18.

Plaintiff's affidavit also contradicts her deposition testimony about the Improvement Action Plan ("IAP") that was issued to her in August 2015, and which she subsequently violated in September 2015.  Plaintiff states in her affidavit that she "was terminated for allegedly releasing a call too early even though [her] current IAP did not require such action in response to a subsequent violation."  Pl.'s Aff. ¶ 55.  However, at her deposition, Plaintiff was directly asked whether she understood that, under the IAP, "further instances of call avoidance or prematurely releasing a call could result in further discipline, including termination."  She responded: "Correct."  Ex. 1, 106:12–16.  Later in the deposition, Plaintiff was asked, a second time, to confirm she was "on an IAP that said any further instances of call avoidance could result in [her] separation."  She again responded: "Correct."  *Id.* at 209:18–21.

Additionally, in Plaintiff's affidavit, she asserts that, in response to the issuance of a Final Warning for attendance (in February 2015), she had a "pointed discussion" with Annette Wood, in which she told Ms. Wood that First Data was unlawfully retaliating against her because of her accommodation request.  Pl.'s Aff. ¶ 27.  Plaintiff asserts that, during those discussions, Ms. Wood

told her she needed to do what she had to do to "'protect' [her] job," which Plaintiff concluded

was a "threat" against her for not being able to work as scheduled due to her injury.  *Id.* at ¶¶ 28–

29.  However, despite the fact that Plaintiff testified about her discussions with Ms. Wood during

her deposition, Plaintiff did not mention any threatening statements from Ms. Wood.  Instead,

Plaintiff admitted that Ms. Wood promised to "erase" the discipline.  Ex. 1, 126:11–128:9.  Like

in *Jackson* and *King*, Plaintiff's failure to identify Ms. Wood's alleged threatening statements

during her deposition warrants the exclusion of these statements in her affidavit.

 Plaintiff similarly failed to mention at her deposition Ms. Rowe's alleged statement that

Plaintiff was "required to be at work" when Plaintiff allegedly met with Ms. Rowe to discuss the

attendance disciplinary warning that First Data issued to her inadvertently.  Pl.'s Aff. ¶ 22.  Plaintiff

asserts in her affidavit that this statement, combined with the attendance disciplinary warning she

received in February 2015, sent a clear message that First Data would not modify her schedule.

*Id.*  Yet, as already noted, Plaintiff admitted at her deposition that Ms. Rowe clearly informed

Plaintiff that the Company would adjust her schedule for any time that Plaintiff requested off.  Ex.

1, 147:18–148:3; 150:20–151:4.  Plaintiff further admitted at her deposition that First Data

retracted the attendance disciplinary warning it issued to her in February 2015 and informed her

that such warning was issued by error.  *Id.*, 126:7–127:2.

 Furthermore, with regard to the September 2015 call that led to her termination, Plaintiff

asserts in her affidavit:

> . . . I could not hear anyone on the other end of the line, and I followed company
> protocols by asking if anyone was on the line three (3) times.  When I met with Ms.
> Rowe about the call, she asked if my equipment was working correctly.  I told her
> I didn't know if it was or not.

Pl.'s Aff. ¶ 57.  However, at her deposition, Plaintiff did *not* testify that she made any attempts to

engage with the caller.  Rather, when asked if she "ever engage[d] in any service with that customer

or client," she said, "not on the recording that was played for me." Ex. 1, 120:19–121:1. Further, Plaintiff was directly asked to confirm that, on the recording of the call that Ms. Rowe played for her, she could not be heard saying, "hello or hello, this is Terri Cowgill, or, how may I help you?" Plaintiff responded: "Correct." Ex. 1, 122:3–8. Plaintiff also confirmed that she did not have her phone on mute. Ex. 1, 131:18–19. In fact, she testified that, in response to Ms. Rowe's question about whether Plaintiff experienced any phone issues, she said: "I don't think so. I mean, otherwise, I would think that I would have the issue all day." *Id.* at 132:5–9. She later testified, "I don't believe it was a phone issue at all." *Id.* at 132:20–21.

Plaintiff's affidavit—which is replete with Plaintiff's subjective belief and uncorroborated, contradictory statements—should not be considered in opposition to First Data's Motion.

## III.   Exhibits 3, 11, 12, and 16 Should Be Stricken Because They Are Unauthenticated and Constitute Inadmissible Hearsay.

"[T]o be entitled to consideration on summary judgment, the evidence supporting the facts set forth by the parties must be such as would be admissible in evidence." *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 535 (D. Md. 2007) (citing Fed. R. Civ. P. 56(c)). Thus, "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." *Md. Highways Contractors Ass'n v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991). Nor can unsworn, unauthenticated documents be considered on a motion for summary judgment. *Lorraine*, 241 F.R.D. at 536; *Frazier v. Dep't of Juvenile Servs.*, No. CIV. JFM-10-843, 2011 WL 5592890, at *4 (D. Md. Nov. 15, 2011). "The burden is on the proponent of summary judgment material to show its admissibility." *Latson v. Clarke*, 346 F. Supp. 3d 831, 856 (W.D. Va. 2018), *aff'd*, 794 F. App'x 266 (4th Cir. 2019) (citing Fed. R. Civ. P. 56(c)(1)(B) advisory committee's note to 2010 amendment).

Exhibits 3, 11, and 12 should be stricken because they constitute inadmissible hearsay. "While properly authenticated e-mails may be admitted into evidence under the business records exception, … [a]n e-mail created within a business entity does not, for that reason alone, satisfy the business records exception of the hearsay rule." *United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013) (internal quotations and citations omitted). "The business records exception assumes that records containing information necessary in the regular running of a business will be accurate and reliable," but because e-mail "is typically a more casual form of communication than other records usually kept in the course of business, … it may not be appropriate to assume the same degree of accuracy and reliability." *It's My Party, Inc. v. Live Nation, Inc.*, No. CIV. JFM-09-547, 2012 WL 3655470, at *5 (D. Md. Aug. 23, 2012). E-mails may not be admitted under this exception to the hearsay rule unless the proponent of such e-mails provides a basis to establish that they were kept as part of the business's regular operations. *Sinclair Broadcast Group, Inc. v. Colour Basis*, LLC, No. CCB-14-2614, 2016 WL 3541204, at *4 (D. Md. June 29, 2016).

Exhibit 3 is purportedly a chain of e-mails between Plaintiff and EEOC Investigator Janel Griffin, in which Plaintiff suggests she is responding to "interview questions," though the questions themselves are not included. Plaintiff cites Exhibit 3 in support of her allegation that she "cannot engage in certain normal daily activities that she could prior to the accident," including "standing, sitting, lifting, reaching, sleeping, working and performing manual tasks," and she is a "qualified individual with a disability." Pl.'s Statement of Facts ("SOF")), ¶ 6. This e-mail chain is clearly offered to prove the truth of the matter asserted—it includes her own, unsworn statements regarding her allegedly limited ability to engage in certain activities.

Exhibit 11 is purportedly a chain of e-mails between Dawn Rowe and Shelley Williams, which Plaintiff cites in support of her allegation that, "On September 10, 2015, Rowe requested

12

that [Plaintiff] be terminated because she prematurely terminated a call." Pl.'s SOF ¶ 60. Again, this e-mail is clearly offered to prove the truth of the matter asserted—the subject line is "request to terminate 188273" and, in the body of the e-mail, Ms. Rowe appears to state that she is requesting to terminate Plaintiff's employment and explains why.

Exhibit 12 appears to be a continuation of the e-mail chain between Ms. Rowe and Ms. Williams. Plaintiff cites to this e-mail chain in support of a number of her factual allegations—in particular, she suggests that the e-mail from Ms. Williams to Ms. Rowe, in which Ms. Williams notes Plaintiff's hire date and states that Plaintiff "received a '3' rating in her 2014 and 2013 year-end performance evaluations" demonstrates that Plaintiff "had a long career with good evaluations." Pl.'s SOF ¶¶ 62; Pl.'s Opp'n, p. 25. As such, this e-mail is offered to prove the truth of the matter asserted. Moreover, it is unclear whether the second e-mail in this chain, dated September 14, 2015, at 1:24 p.m., is the full e-mail from Ms. Williams to Ms. Rowe or whether only part of the e-mail has been included, since Ms. William's signature block is conspicuously absent.

Plaintiff provided no basis to establish that these e-mails were kept as part of First Data's or the EEOC's regular business operations. As such, Plaintiff has provided no basis to establish that these records meet any hearsay exception and all three of these exhibits should be stricken as inadmissible hearsay. *Sinclair Broadcast Group, Inc.*, 2016 WL 3541204, at *4; *It's My Party, Inc.*, 2012 WL 3655470, at *5 (excluding e-mail attached as exhibit to summary judgment opposition as inadmissible hearsay because "Plaintiffs have not provided any specificity regarding their recordkeeping practices" and therefore "have not carried their burden in establishing that this e-mail falls within the business records exception.").

Exhibit 16—purportedly medical records documenting Plaintiff's alleged back and neck pain—should also be stricken because the records are unauthenticated and constitute inadmissible hearsay. Consideration of unauthenticated medical documents is improper on a motion for summary judgment because such documents would be inadmissible at trial. *See Sherif v. Univ. of Maryland Med. Ctr.*, 127 F. Supp. 3d 470, 472 (D. Md. 2015) (refusing to consider unauthenticated doctor's note in resolving summary judgment motion); *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 515 (D. Md. 2008) (refusing to consider various, unauthenticated medical documents in resolving summary judgment motion).

Moreover, Exhibit 16 contains two levels of hearsay: (1) the physician's written statements and (2) the physician's recording of Plaintiff's out-of-court statements. As such, under Fed. R. Evid. 805, "Plaintiff must be able to demonstrate that each level of hearsay is subject to either a recognized exception or the nonhearsay rules contained in Rule 801." *Jacobsen v. Towers Perrin Forster & Crosby, Inc.*, No. CIV.A.RDB-05-2983, 2008 WL 782477, at *9 (D. Md. Mar. 20, 2008). Plaintiff has provided no basis to establish that the records themselves and the hearsay statements they contain meet any exception to the hearsay rule. Thus, these records should be disregarded. *See id.* at *10 (granting motion to strike portion of declaration submitted in opposition to summary judgment motion because plaintiff failed to demonstrate that out-of-court statements fell within a recognized hearsay exception).

## IV. Exhibits 10, 13, 14, 15, and 17 Should Be Stricken Because They Are Unauthenticated and Inadmissible.

Plaintiff's Opposition incorporates five exhibits that relate to two administrative agency proceedings: (1) an unemployment insurance appeal before the Maryland Department of Labor and (2) the EEOC's investigation of Plaintiff's charge of discrimination against First Data. All of these exhibits should be stricken because they are unauthenticated and inadmissible.

14

First, the unemployment appeal records should be stricken due to their limited probative value, prejudicial nature, and lack of authentication.  Fed. R. Evid. 803(8)(C) excludes from the general hearsay rule certain reports of public offices or agencies setting forth factual findings resulting from an investigation made pursuant to authority granted by law—but such reports do not qualify for the exception if "the [s]ources of information or other circumstances indicate lack of trustworthiness."  *Rodriguez*, 545 F. Supp. 2d at 514.  Even where trustworthiness is not an issue, the Fourth Circuit has held that evaluative public records may be inadmissible because they suffer from an undue risk of prejudice, and "[t]o the extent they contain credibility determinations, they tend to undermine the exclusive province of the jury."  *United States v. MacDonald*, 688 F.2d 224, 230 (4th Cir. 1982).  Additionally, "for a court to accurately determine whether there is a factual dispute for a jury, the judge must be assured that the evidence he examines at summary judgment is as authentic as that which the jury will consider."  *Bookhultz v. Sears Authorized Hometown Stores, LLC*, No. CV CBD-16-2176, 2018 WL 1795338, at *1 (D. Md. Apr. 13, 2018) (quoting *Yoon v. Sebelius*, Civ. A. No. CBD-08 3173, 2010 WL 4293513, at *1 (D. Md. Nov. 1, 2010)).

Plaintiff relies on Exhibit 10, which purports to be an Unemployment Insurance Appeals Decision by the Maryland Department of Labor, Licensing and Regulation ("DLLR"), to support her claim that she followed the appropriate procedures on the September 9, 2015 call that led to her termination.  Pl.'s SOF ¶ 85.  Plaintiff notes the "DLLR judge found that [she] was credible on this point."  Pl.'s Opp. 24.  Putting aside the fact the content of Exhibit 10 constitutes inadmissible hearsay and would be highly prejudicial (*see MacDonald*, 688 F.2d at 230), Plaintiff's reliance on Exhibit 10 is misplaced.  Plaintiff appears to assert that a finding by the Maryland Department of Labor, Licensing and Regulation – Division of Appeals should be

binding here.  Plaintiff is wrong.  Factual determinations made in state unemployment claim proceedings receive no preclusive effect in actions brought under federal discrimination statutes, despite involving the same operative facts.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 361 (4th Cir. 1985), *abrogated on other grounds* by *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  The Fourth Circuit explained, "judicial determination by one administrative agency is not binding on another adjudicator, which is seeking to determine an apparently identical issue under a different statute . . . so long as there exist substantial differences between the statutes themselves."  *Id*. at 361–62 (internal quotations and citations omitted). Observing that the legal standards under Maryland Unemployment Insurance Law and Title VII are not identical, the *Ross* court concluded that findings concerning entitlement to unemployment benefits cannot be given preclusive effect in a Title VII action.  *Id*. at 362 (observing that "a Maryland administrative adjudicator is concerned with forbidden *conduct* on the part of the employee, Title VII directs the factfinder's attention to a forbidden *motive* on the part of the employer") (emphasis added); *see also Dawson v. Jetty Partners*, LLC, No. JKB-11-1129, 2012 WL 439672, at *6–7 (D. Md. Feb. 8, 2012) (same holding, but in an ADA case).

Exhibit 14 is purportedly a page of the unemployment insurance investigator's notes and is both itself, and filled with, hearsay.  The document contains no indication of its source or the investigator's full name, and it includes handwritten comments by an unidentified person.  As such, it lacks trustworthiness and is inadmissible.  *See Rodriguez*, 545 F. Supp. 2d at 513–14 (declining to consider plaintiff's own statements summarizing Department of Labor investigation of case or document purporting to be DOL report presented in opposition to defendant's motion for summary judgment where document was unauthenticated and genuineness "otherwise doubtful" due to lack of indication of source and name of investigator).

16

Second, the EEOC records (Exhibits 13, 15, and 17) should be stricken due to their limited probative value and prejudicial nature.   "Recognizing their limited probative value, courts frequently preclude admission of EEOC records."  *Blasic v. Chugach Support Servs., Inc.*, No. WDQ-04-4022, 2010 WL 3294353, at *4 n.17 (D. Md. Aug. 20, 2010) (citing *Cox v. Babcock & Wilcox Co.,* 471 F.2d 13, 15 (4th Cir. 1972)).   Courts in the Fourth Circuit have held that the EEOC's determination, in particular, "can have a highly prejudicial effect, and is irrelevant since the court or the jury determines whether employment discrimination occurred."  *See Staton v. Dollar Tree, Inc.*, No. 2:08CV350, 2008 WL 11383389, at *3 (E.D. Va. Dec. 11, 2008) (granting motion to strike EEOC documents attached to complaint where EEOC's determination could impermissibly influence jury's decision if case went to trial).  For this reason, courts have held that such evidence is beyond the court's review on a motion for summary judgment, "which must be limited 'to the *admissible evidence* forecasted by the parties.'"  *Jimoh v. Charlotte-Mecklenburg Hous. P'ship, Inc.*, No. 3:08-CV-495-RJC-DCK, 2010 WL 1924480, at *6 (W.D. N.C. May 12, 2010), *aff'd,* 428 F. App'x 241 (4th Cir. 2011) (quoting *Toll Bros., Inc. v. Dryvit Sys., Inc.,* 432 F.3d 564, 568 (4th Cir. 2005) (emphasis in original).

Plaintiff cites Exhibit 17—purportedly an EEOC Determination Letter dated March 21, 2019—to demonstrate she is a qualified individual with a disability.  Pl.'s SOF ¶ 6.  The first and third pages of this exhibit appear to constitute the EEOC Determination Letter Plaintiff references. The letter notes that the Commission requested certain information from Respondent, and based on "Respondent's failure to produce the requested response, [the Commission] inferred that examination of Respondent's evidence would not refute the Charging Party's allegations." However, the second page of Exhibit 17 appears to be a partial, later determination letter—dated June 5, 2019—that notes that, after a review of evidence provided by both Plaintiff and the

17

Respondent, "it cannot be concluded that you were denied reasonable accommodations, disciplined and discharged because of your disability."  Even if the initial "reasonable cause" determination *was* the EEOC's final determination (which it was not), exclusion of the determination letter would be justified here.  *See Staton*, 2008 WL 11383389, at *3.

Here, even more so than in *Staton*, exclusion of the EEOC's initial determination letter is appropriate because the EEOC later overturned its "reasonable cause" determination after receiving additional information from First Data.  And Exhibit 17 lacks trustworthiness because of the confusing manner in which the two determination letters have been combined and the fact that certain pages appear to be missing, which, alone, warrants the exclusion of this exhibit.  *See Stetter v. Shalala*, 13 F. App'x 79, 86 (4th Cir. 2001) (upholding district court's exclusion of report generated during an EEO complaint process due to untrustworthy nature and danger of unfair prejudice).  Not only is the EEOC determination hearsay and otherwise inadmissible, **it does not even support Plaintiff's position** since the EEOC determined there was no reasonable cause to conclude the ADA had been violated with respect to Plaintiff.

Relatedly, Exhibit 13 appears to be a letter from McGrath North, First Data's counsel at the time, to the EEOC requesting that the EEOC reconsider its initial reasonable cause determination (which, as previously noted, the EEOC ultimately did).  Counsel provided an explanation for the delayed response to the EEOC's request for information and attaches the information requested.  Notwithstanding the fact that this letter constitutes inadmissible hearsay, it is unduly prejudicial because it references the EEOC's initial determination that was later reversed.  As such, it must be disregarded for purposes of First Data's Motion.

Exhibit 15 is purportedly the EEOC's Notice of Charge, which Plaintiff relies on to support her allegation that the EEOC required First Data to preserve the recording of the call that led to

her termination.  Pl.'s SOF ¶ 81.  Plaintiff alleges that First Data "has failed … to preserve this evidence."  *Id*. at ¶ 82.  The second page of Exhibit 15 states, "EEOC regulations require respondents to preserve all payroll and personnel records relevant to the charge until final disposition of the charge or litigation."  But Plaintiff fails to demonstrate how the call recording constitutes a "personnel record" subject to preservation.  And regardless, Plaintiff offers no evidence to suggest that First Data still had the call recording in its possession at the time her EEOC charge was filed, which was more than two years after the call itself.  Thus, Exhibit 15 lacks probative value and should be excluded on relevance grounds.

## **CONCLUSION**

For the foregoing reasons, Defendant First Data Technologies, Inc. respectfully requests that the Court grant its Motion to Strike Exhibits 1, 3, 10, 11, 12, 13, 14, 15, 16, and 17 of Plaintiff's Opposition.

602620083

Dated:  November 30, 2020    Respectfully Submitted,

        */s/ Bryan J. Harrison*

Heather  S. Goldman,  D. Md. Bar #18951
Bryan J. Harrison, D. Md. Bar # 19165
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street, NW, Suite 700
Washington, D.C. 20004
Telephone:  (202) 508-6311
Facsimile:  (202) 508-6200
E-mail:  heather.goldman@bclplaw.com
    bryan.harrison@bryancave.com

Charles B. Jellinek (admitted *pro hac vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020
E-mail:  cbjellinek@bclplaw.com

*Attorneys for Defendants*

602620083

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 30, 2020, a true and accurate copy of the foregoing Defendant First Data Technologies Inc.'s Memorandum in Support of Motion to Strike Plaintiff's Exhibits was filed with the Court's electronic CM/ECF filing system and was served via electronic mail on, and a hard copy was served by depositing same with the U.S. Mail, first class, postage prepaid to, the following:

> Terri Cowgill
> 121 E. North Street
> Waynesboro, PA 17268
> terricowgill@hotmail.com
>
> *Plaintiff (Pro Se)*

_/s/ Bryan J. Harrison_

602620083