IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERRI COWGILL,                          *
                                        *
            Plaintiff,                  *
                                        *
      vs.                               *        Civil Action No.   ADC-19-2565
                                        *
FIRST DATA TECHNOLOGIES, INC,           *
                                        *
            Defendant.                  *
                                        *

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendant First Data Technologies, Inc. ("Defendant") moves this Court for summary judgment. ECF No. 52. Plaintiff Terri Cowgill ("Plaintiff") alleges in her Complaint violations of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). ECF No. 1. Additionally, Defendant filed a Motion to Strike Plaintiff's Exhibits (ECF No. 62) attached to her Response to its Motion (ECF No. 56) as not integral to the pleadings and unauthenticated. After considering the Motions and responses thereto (ECF Nos. 52, 56, 61, 62,64, 65), the Court finds that no hearing is necessary. Loc.R.105.6 (D.Md. 2018). For the reasons stated herein, the Court GRANTS Defendant's Motion for Summary Judgment. ECF No. 52. The Court will also DENY Defendant's Motion to Strike certain Plaintiff's exhibits as moot (ECF No. 62).

## FACTUAL BACKGROUND

Plaintiff began working for First Data at their Hagerstown, Maryland location on July 5, 2004. ECF No. 1 at 4, ¶ 14; ECF No. 31-1 at 2. On January 5, 2015, Plaintiff was injured in a car accident, from which she developed severe back and neck pain and headaches. ECF No. 1 at 4, ¶ 14. Under the ADA, an individual is disabled when they have a physical impairment "that

substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Plaintiff alleges she was disabled within this definition as a result of her car accident, but she was still "able to perform the essential functions of her job with reasonable accommodations." ECF No. 1 at 4, ¶ 15–16.

Plaintiff applied for intermittent FMLA leave, for which she was approved on January 26, 2015, for the period of January 15, 2015 through February 20, 2015. *Id.* at 5, ¶ 18. Plaintiff submitted a request for an amended schedule based on her FMLA approval, of four hours per day three to five days per week. *Id.* at 5, ¶ 19. Defendant acknowledged and approved Plaintiff's request. ECF No. 52-8 at 1. Plaintiff alleges that it was after this that her supervisor, Dawn Rowe, had a change in attitude towards Plaintiff, demonstrated by Ms. Rowe's reluctance to say, "good morning" to her. ECF No. 56 at 3, ¶ 14. Despite being approved for FMLA, on February 11, 2015, Plaintiff received a Final Written Warning for violating First Data's attendance policy. ECF No. 1 at 5, ¶ 20. This warning was dismissed after Plaintiff notified Human Resources. *Id.*

On August 4, 2015, Plaintiff received notice that she was being placed on an Improvement Action Plan ("IAP") for "dropping" a call on July 10, 2015. *Id.* at 5, ¶ 21. Both the Quality Department and Team Managers reviewed Call Center Representatives' calls and monitored their performance. ECF No. 52-5 at 4, ¶ 24. Plaintiff alleges First Data has a standard practice of reviewing questionable calls within two days, and it was very unusual to receive notice of a questionable call almost a month after it occurred. *Id.*

On August 20, 2015, Plaintiff was reapproved for intermittent FMLA. *Id.* at 6, ¶ 24. On September 9, 2015, Plaintiff was on a call with a customer and could not hear the caller speaking; she disconnected the call after thirty seconds of silence from the caller, per First Data policy. *Id.* at 6, ¶ 25. While in the process of disconnecting, Plaintiff heard the caller speak, but it was too late

2

to retrieve the call. *Id.* Plaintiff alleges First Data never determined whether the silence was due to any mechanical issue with either Plaintiff's or the caller's phone. *Id.* The caller subsequently gave her a low rating on the post-call survey, negatively implicating Plaintiff's IAP. *Id.* First Data terminated Plaintiff for violating her IAP on September 14, 2015, even though Plaintiff was a long-term employee with an otherwise good performance record. *Id.* at 7, ¶ 26.

On August 17, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against First Data for discrimination based on disability. *See* ECF No. 31-2. On June 5, 2019, Plaintiff received a dismissal of her Charge from the EEOC as well as a Notice of Rights letter. *See* ECF No. 1-4.

### PROCEDURAL BACKGROUND

On September 5, 2019, Plaintiff filed a four-count suit in this Court, seeking declarations that Defendant violated the ADA and FMLA, permanent injunctions enjoining Defendant and its employees from further discrimination, and awards of past and future pecuniary and non-pecuniary losses, liquidated damages, punitive damages, and prejudgment interest. ECF No. 1.[1] On December 5, 2019, Defendant filed a Motion to Dismiss Counts III and IV for failure to state a claim and lack of jurisdiction. ECF No. 31. Additionally, on January 2, 2020, Defendant filed a Motion to Strike exhibits to Plaintiff's Response. ECF No. 42. On February 4, 2020, this Count granted Defendant's motions. ECF Nos. 44, 45.

On September 17, 2020, Defendant filed a Motion for Summary Judgment seeking a ruling from the Court that Plaintiff cannot prevail on the two remaining counts. ECF No. 52. Additionally, Defendant filed a Motion to Strike Plaintiff's Exhibits (ECF No. 62) attached to her Response to

---

[1] On September 5, 2019, in accordance with Standing Order 2019-07 of the United States District Court for the District of Maryland and upon consent of all parties, this case was directly assigned to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 3.

its Motion (ECF No. 56). On December 13, 2020, Plaintiff filed a Response in Opposition to Defendant's Motion to Strike. ECF No. 64. Accordingly, the Motion for Summary Judgment and the Motion to Strike are fully briefed.

## DISCUSSION

### A. Standard of Review for Defendant's Motion for Summary Judgment

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on

4

the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 249). Thus, "to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Moss v. Parks Corp.*, 985 F.2d 736, 738 (4th Cir. 1993) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)).

## B. Defendant's Motion for Summary Judgment

In its Motion, Defendant seeks summary judgment on Count I and Count II of Plaintiff's Complaint. The Court will address each Count in turn.

### 1. Count I: ADA Discrimination

In Count I, Plaintiff alleges that Defendant violated Sections 102(a), (b)(1), and (b)(4) of the ADA, by firing her based on her disability. ECF No. 1 ¶ 29. Defendant argues that Plaintiff cannot establish a *prima facie* case because Plaintiff lacks evidence of an inference of unlawful discrimination. The Court agrees with Defendant.

Title I of the ADA forbids employers from intentionally discriminating against persons with disabilities. 42 U.S.C. § 12112(a)-(b). The plaintiff bears the burden of proving her claim by a preponderance of the evidence when alleging discrimination by termination. *Equal Emp. Opportunity Comm'n v. Mfrs. and Traders Tr. Co.*, 429 F.Supp.3d 89, 118 (D.Md.2019). At summary judgment, there are two avenues of proof by which a plaintiff may prove intentional employment discrimination. *Id.* (internal citations omitted). The first avenue of proof is through "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* (internal citation omitted). The second avenue of proof is the burden-shifting framework of *McDonnell Douglas. Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). *Id.* at 119.

Although *McDonnell Douglas* involved a claim of racial discrimination under Title VII, its burden-shifting methodology has been adapted for use in ADA discrimination cases. *See, e.g., Raytheon Co. v. Hernandez*, 540 U.S. 44, 50-52 & n.3 (2003) (applying *McDonnell Douglas* framework in ADA employment discrimination case). The *McDonnell Douglas* approach requires the plaintiff to first establish a *prima facie* case of discrimination, then shifting the burden to the defendant to produce evidence that it acted with a legitimate, nondiscriminatory reason. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 575 (4th Cir.2015). If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the proffered reason was mere pretext. *Id.*

Here, Plaintiff's disability discrimination claim must proceed under the second avenue of proof because she has not presented direct evidence of discrimination. *Mfrs. and Traders Tr. Co.*, 429 F.Supp.3d at 118. "[E]vidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision" is required to

satisfy this method of proof. *Id.* (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391-92 (4th Cir.2001)). Plaintiff never heard statements reflecting a bias against disabled employees. ECF No. 52-4 at p. 90-95. Plaintiff also never encountered anything from those she believed discriminated against her that made her think her termination was based on her disability. *Id.* Therefore, Plaintiff cannot offer direct evidence of discrimination and must continue under the *McDonnell Douglas* burden-shifting framework. *Mfrs. and Traders Tr. Co.*, 429 F.Supp.3d at 119.

To proceed under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of disability discrimination. *Equal Emp. Opportunity Comm'n v. Optimal Solutions & Tech., Inc.*, 422 F.Supp.3d 1037, 1042 (D.Md.2019); *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir.2012). To establish a *prima facie* case of disability discrimination through wrongful termination, the plaintiff must present evidence demonstrating that she was: (1) a qualified individual with a disability; (2) who had been discharged; (3) while fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination. *Id.*

First, in order to survive summary judgment on an ADA discrimination claim, a plaintiff is first required to "produce evidence that [she] is disabled." *Reynolds*, 701 F.3d at 150. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). This language is not meant to be a demanding standard and courts should construe the statutory text "broadly in favor of expansive coverage" in considering whether an impairment substantially limits an individual in a major life activity. *White v. City of Annapolis by & through City Council*, 439 F. Supp. 3d 522, 543 (D.Md.2020) (quoting *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 670 (4th

Cir.2019)). "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." *Id.* (quoting *Jacobs*, 780 F.3d at 572).

Viewing the facts in Plaintiff's favor, Plaintiff has established the first two elements of her *prima facie* case. Plaintiff states that she was able to perform the essential functions of her job in spite of her injuries, making her a "qualified individual" under the ADA. 42 U.S.C. § 12111(8). A "qualified individual" is defined in the ADA as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* In her Complaint, Plaintiff asserts that as a result of a car accident, she sustained injuries that dramatically impacted her quality of life. ECF No. 1 at 4 ¶ 15. She was unable to sit or walk for extended periods of time and experienced pain when attempting to perform daily tasks. *Id.* Thus, for the purposes of satisfying the first prong of her *prima facie* case of discrimination, Plaintiff has provided adequate evidence that she was a qualified individual with a disability. *Reynolds*, 701 F.3d at 150. Further, it is undisputed that Plaintiff was discharged from her employment with Defendant, thereby satisfying the second prong of her *prima facie* case. *Optimal Solutions & Tech., Inc.*, 422 F.Supp.3d at 1042. However, Plaintiff cannot satisfy the remaining two elements.

Plaintiff's claim fails at the third prong because Plaintiff was not meeting her employer's expectations at the time of termination. *Id.* The record indicates that when Plaintiff was fired, she was on an Improvement Action Plan ("IAP") because she had previously violated Defendant's policy by dropping a call on July 10, 2015. ECF No. 1 at 5 ¶ 21. Plaintiff was placed on the IAP on August 4, 2015, and informed that her calls would be monitored for 90 days to ensure her compliance with company policy. *Id.* Plaintiff was aware that pursuant to the terms of her IAP,

during the 90 days any further instances of call avoidance could result in her termination. ECF No. 52-4 at 46; ECF No. 1 at 6,7 ¶ ¶ 25-26; ECF No. 52-6 at 1.

On September 9, 2015, Plaintiff prematurely ended a call and received a low rating from the caller in a post-call survey. ECF No. 1 at 6 ¶ 25. Prematurely ending a call directly violated the conditions of Plaintiff's IAP (ECF No. 52-6 at 1) and Plaintiff was subsequently terminated for the second infraction. ECF No 1 at 7 ¶ 26. Accordingly, Plaintiff was not fulfilling Defendant's legitimate expectations at the time of discharge. Plaintiff relies on the argument that she was meeting Defendant's expectations because prior to her termination she routinely received exceptional performance reviews. *Id.* at 6 ¶ 23. However, she does not cite any reviews beyond April 2015, and she was placed on the IAP in August of that year. *Id.* at 5 ¶ 21. Plaintiff was found to have committed the second violation of company policy on September 9, 2015, a little over 30 days into her 90-day probationary period. *Id.* at 6 ¶ 25. Plaintiff is unable to demonstrate that she was adequately meeting Defendant's expectations at the time of her termination because she committed the second violation while on the IAP. Therefore, Plaintiff's claim fails at the third prong.

Additionally, Plaintiff cannot establish the fourth element in her *prima facie* case of discrimination. Defendant maintains that Plaintiff lacks evidence showing that her disability was the determining factor in Defendant's decision to terminate her. ECF No. 52-1 at 17. The Court agrees.

In reviewing a grant of summary judgment, courts evaluate the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the well-pleaded facts against the moving party. *Muse-Ariyoh v. Bd. of Educ. of Prince George's Cty.*, 235 Md. App. 221, 239 (2017). Here, Plaintiff is unable to satisfy the fourth prong of her

*prima facie* case because she has failed to provide evidence that her termination occurred under circumstances that "raise a reasonable inference of unlawful discrimination." *Optimal Solutions & Tech., Inc.*, 422 F.Supp.3d at 1042. Plaintiff does not offer direct evidence, just her own conclusions, that her termination was directly related to her request for FMLA leave. *See Mackey v. Shalala*, 360 F.3d 463, 469–70 (4th Cir. 2004) ("A plaintiff's own self-serving opinions, absent anything more, are insufficient to establish a prima facie case of discrimination."). "Mere unsupported speculation…is not enough to defeat a summary judgment motion. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir.1995).

Though a Plaintiff's speculation alone is not enough to infer discrimination, Courts may look at the temporal proximity between when an employer learns of an employee's disability and when the employee is fired to determine whether an employer violated Title I of the ADA. *See Pickering v. Va. State Police*, 59 F.Supp.3d 742, 748 (E.D.Va.2014). In a discrimination case, Courts may also infer causation when a protected action taken by an employee is closely followed by an adverse action by their employer. *King v. Rumsfeld*, 338 F.3d 145 (4th Cir.2003) (finding that plaintiff's filing of an EEOC complaint was protected activity, and his termination an adverse action); *Silva v. Bowie State University*, 172 Fed.App'x 476 (4th Cir.2006) (same).

Here, Plaintiff is also unable to establish a causal link through temporal proximity. Plaintiff was not discharged unexpectedly or suddenly after Defendant learned of her disability. Plaintiff was injured and first applied for intermittent FMLA in January 2015. ECF No. 1 at 5 ¶¶ 15, 18. She was terminated nine months later in September. *Id* at 7 ¶ 26. "The passage of time…tends to negate the inference of discrimination." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (abrogated on other grounds by *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 249 (4th Cir.2015)). In this matter, nine months is well beyond what this court has accepted to be within

the limits to infer causation.[2] *Danial v. Morgan State Univ.*, 426 F.Supp.3d 135, 149 (D.Md.2019) (determining that plaintiff could not rely on temporal proximity to establish a causal link after seven months had passed); *Angelini v. Baltimore Police Department*, 464 F.Supp.3d 756, 792 (D.Md.2020) (determining that a gap of three months undermined the inference of causation).

Plaintiff argues however, that "a closer, more comprehensive review of the facts suggests a continuing, escalating pattern of an unlawful disparate disciplinary actions, verbal harassment, and intimidating tactics culminating with [Plaintiff's] termination." ECF No. 56 at 30. Plaintiff appears to argue that the occurrences she highlights are adverse employment actions, which then satisfy the temporal proximity requirements. However, the actions Plaintiff mentions are not adverse employment actions, and thus cannot establish causation.

Plaintiff states that her harassment began "almost immediately after she requested FMLA leave and ADA accommodation." ECF No. 56 at 30. "[A]lthough actions short of termination may constitute an adverse employment action within the meaning of [Title VII]. . . not everything that makes an employee unhappy is an actionable adverse action." *Settle v. Balt. Cnty.*, 34 F.Supp.2d 969, 989 (D.Md.1999) (quoting *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997)) (internal quotation marks omitted). An adverse employment action is one that may

---

[2] The Court acknowledges that the Fourth Circuit in *Price* found that the temporal proximity requirement was satisfied by a period of nine to ten months between the protected activity and the adverse employment action. *Price*, F.3d 209 at 213. This case, however, is distinguishable from *Price*. In *Price*, the plaintiff brought a failure-to-hire claim against the defendant. The *Price* court stated that "it [was] a very close question" whether the adverse action was close enough in time to the protected activity, but found for the plaintiff because "a reasonable trier of fact could conclude that…[the employer], at the first available opportunity, declined to hire [the plaintiff]" upon learning of the protected activity. *Price*, 380 F.3d at 213. *Price* is distinguishable as a failure-to-hire case. The facts of that case and infrequency of interaction between plaintiff and defendant support the *Price* court's determination that the "first available opportunity" only presented itself months later. Here, a reasonable trier of fact could conclude that considering the number of calls Plaintiff fielded for Defendant daily, the eight months between the two events undermines the presumption that the July 10th call was Defendant's "first available opportunity" to discipline Plaintiff. This combined with the fact that the record shows Plaintiff's supervisor and the Quality Department personnel both independently determined that Plaintiff violated company policy by being argumentative with a caller and prematurely disconnecting the call (ECF No. 52-5 at 4) leads the Court to find that *Price* does not compel a finding Plaintiff has established *a prima facie* case.

affect a term, condition, or benefit of an individual's employment. *Strothers v. City of Laurel, Maryland,* 895 F.3d 317, 327 (4th Cir.2018). None of the examples Plaintiff provides rise to the level of illegality. Plaintiff is unable to offer any indication how the actions she discusses changed a term, condition, or benefit of her employment. *Westmoreland v. Prince George's Cnty., Md.,* 876 F.Supp.2d 594, 604–05 (D.Md.2012).

The first occurrence Plaintiff points to is that after she requested FMLA "[Ms. Rowe] could barely bring herself to greet [Plaintiff] in the morning." *Id.* A change in attitude does not equate to an adverse action. *See Burlington N. & S.F.R. Co. v. White,* 548 U.S. 53, 68 (2006) (opining that personality conflicts that generate antipathy as well as snubbing by supervisors or co-workers are not cognizable adverse actions under § 704(a)). "Petty slights, minor annoyances, and simple lack of good manners" do not constitute adverse actions. *Hinton v. Virginia Union University,* 185 F.Supp.3d 807, 831 (E.D.Va.2016) (citing *Burlington N. & S.F.R. Co.,* 548 U.S. at 68).

Plaintiff also speculates that the warning she was mistakenly issued in February 2015, "foreshadowed [Defendant's] intent to terminate [Plaintiff] due to her intermittent leave." ECF No. 56 at 30. The warning also cannot constitute an adverse action because it did not change a term or condition of Plaintiff's employment. After Plaintiff notified HR of the issue, it was dismissed, leaving no mark on Plaintiff's record. ECF No. 1 at 5 ¶ 20.

Plaintiff's conclusions as to why she was placed on an IAP are not substantiated by concrete evidence. Without more, Plaintiff is unable to establish a *prima facie* case of discrimination. What the evidence demonstrates is that Plaintiff was placed on an IAP for violating Defendant's call avoidance policy and given sufficient warning of the consequences of further violations. ECF No. 52-6.

Assuming *arguendo* that Plaintiff can show a *prima facie* case of discrimination, Plaintiff is unable offer evidence of pretext for Defendant's reason for her termination. *Mfrs. and Traders Tr. Co.*, 429 F.Supp.3d at 119. Under the *McDonnell Douglas* burden-shifting framework, once a plaintiff establishes a *prima facie* case of unlawful discrimination, there is a presumption of illegal discrimination and the burden of production shifts to the employer. *Id.* (internal citation omitted). It is then up to the employer to articulate a legitimate, non-discriminatory reason for its action. *Id.*

Here, Defendant has met this burden. Defendant maintains that Plaintiff was fired for violating her IAP when she prematurely released a call. ECF No. 52-1 at 12. Plaintiff's IAP clearly states that call avoidance, including releasing calls prematurely, was grounds for termination. ECF No. 52-6. Defendant has sustained its burden of production and therefore the analysis proceeds to the final step in the *McDonnell Douglas* framework. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, (1993).

The final step in the *McDonnell Douglas* framework requires Plaintiff to present evidence or argument from which "a factfinder could conclude that [D]efendant's proffered legitimate reason for [Plaintiff's] termination was pretextual, and that unlawful discrimination was the true reason." *Mfrs. and Traders Tr. Co.*, 429 F.Supp.3d at 121. To accomplish this, Plaintiff must prove that "both the reason was false, and that discrimination was the real reason." *Id.* (internal citation omitted).

Plaintiff argues that she was terminated because her request for a modified schedule was "not just an inconvenience but diametrically opposed to company policy" and therefore the calls for which Plaintiff was terminated were pretext. ECF No. 56 at 21, 23. Regarding the first call on July 10, 2015, Plaintiff attempts to bolster her argument by asserting that Ms. Rowe, rather than the Quality Department, flagging Plaintiff's call and Defendant's failure to produce the call, raises an

inference of pretext. ECF No. 56 at 23. She asserts that the discipline for the second call was a pretext because "no one would find it reasonable to terminate someone for hanging up after waiting for someone on the other line to answer for almost thirty seconds...this suggests [Defendant] was making a false claim not supported by the record." ECF No. 56 at 24.

Here, Plaintiff lacks evidence showing that both the calls were pretext and the real reason for her termination was based in discrimination. *Mfrs. and Traders Tr. Co.*, 429 F.Supp.3d at 121. The record demonstrates that pursuant to company policy and independent review, Plaintiff mishandled the two calls. ECF No. 52-2 at ¶ 31, 32, 46. According to Ms. Rowe, it was her opinion that Plaintiff had been argumentative with the caller on the July 10, call and that Plaintiff's "conduct on the call did not comport with the Company's service expectations." *Id.* Plaintiff acknowledged that call quality is subjective, that "not everybody interprets it the same way." ECF No. 52-4 at 38.

Regarding the call on September 9, Ms. Rowe determined that Plaintiff had again engaged in call avoidance which violated the conditions of Plaintiffs IAP. It is company policy that even if a caller does not appear to be on the line, Call Center Representatives (like Plaintiff) are required "to say hello or make contact efforts three times before terminating the call." ECF No. 52-5 at 3. After confirming with Plaintiff that the lack of response was not due to equipment failure, Ms. Rowe determined that Plaintiff had once again violated her IAP resulting in termination. *Id.* at 5.

"It is not the purpose...nor the function of this court to second guess the wisdom of business decisions." *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir.1992). Plaintiff alludes to the fact that because her supervisor rather than the Quality Department flagged her first call, that this infers the initial disciplinary action was a pretext. ECF No. 56 at 23. Plaintiff's allegations are undermined by the record evidence. Though it may have been that the Quality Department

primarily monitors and reviews calls, the record indicates that it was company practice to have Team Managers such as Ms. Rowe involved in reviewing calls. ECF No. 52-5 at 4. It was "part of regular call monitoring and monthly scoring" that Ms. Rowe reviewed the recorded call from July 10, 2015. *Id.*

Pursuant to Defendant's policy and Plaintiff's IAP, call avoidance consists of releasing calls prematurely and "employees who conduct any...form[] of call avoidance may have their employment terminated." ECF No. 52-6 at 1. Plaintiff states that "her remaining on the call for almost 30 seconds...is inconsistent with call avoidance." ECF No. 56 at 25. However, Defendant's policy required Plaintiff to say hello three times before terminating a call. ECF No. 52-4 at 33-34. Plaintiff admits that on the September 9, 2015 call she cannot be heard attempting to contact the customer prior to terminating the call. *Id.* at 53-55, 61-62.

Plaintiff is unable to provide evidence showing that Defendant's reasons for placing her on an IAP and subsequently terminating her, were false or grounded in discrimination. Plaintiff relies in part, on Defendant's failure to produce the calls to support the presumption of pretext. Plaintiff suggests that the reason Defendant has not produced the calls is that "it does not support Rowe's claim." ECF No. 56 at 23. However, this reliance is misplaced.

> Although an inference arises from the suppression of evidence by a litigant that this evidence would be unfavorable to his cause ... it is well settled that this inference does not amount to substantive proof...Even in evidence spoliation cases, the fact finder is not permitted to find the destruction of evidence to be substantive proof that the evidence was unfavorable.

*Muse-Ariyoh,* 235 Md. App. at 239 (internal citation omitted).

Plaintiff also suggests that Defendant "deviated from their standard progressive discipline process" and this fact supports a reasonable inference of discrimination. ECF No. 56 at 25. Plaintiff quotes an excerpt from the First Data Harassment Policy to demonstrate that Ms. Rowe "departed

from [Defendant's] progressive discipline by immediately placing [Plaintiff] on an IAP." ECF No 56 at 25. This argument is without merit.

First, the Harassment Policy that Plaintiff quotes here is inapplicable. Plaintiff was not placed on an IAP for harassment but for violating Defendant's call policy. Second, Plaintiff appears to base the deviation argument off the "significant departure" from her prior disciplinary actions with Defendant in 2006, as well as the disciplinary actions afforded to two other employees. ECF No 56. At 26-27. However, according to the evidence, Defendant acted within its policy when it placed Plaintiff on the IAP:

> Violation of the Company's policies and rules way warrant disciplinary action. Where appropriate, discipline may include verbal and written counseling, probation, suspension, and/or termination. However, the Company may, at its sole discretion utilize whatever for of discipline is deemed appropriate under the circumstances, up to and including, immediate termination of employment. **No particular order of discipline is required**.

ECF No. 56-6 at 3 (emphasis added). Therefore, Defendant does not, in fact, have a progressive discipline process like Plaintiff suggests.

For the aforementioned reasons, Plaintiff cannot satisfy the third element of her *prima facie* case of discrimination by demonstrating that she was meeting her employer's expectations at the time of termination. Plaintiff also cannot satisfy the fourth element because she has failed to produce evidence creating an inference of discrimination and is unable to rely on temporal proximity to establish causation. Finally, *assuming arguendo* that Plaintiff could establish a prima facie case of discrimination, she has not provided evidence showing discrimination was Defendant's true reason for terminating her. Accordingly, since Plaintiff is unable to make a *prima facie* case of discrimination nor satisfy the evidentiary burden of the *McDonell Douglas* test, this Court will GRANT Defendant's Motion for Summary Judgment as to Count I of Plaintiff's Complaint.

2. Count II: Failure to Accommodate

In Count II of Plaintiff's Complaint, Plaintiff alleges that Defendant violated the ADA by refusing to grant her request for reasonable accommodation. ECF No. 1 at 9. Plaintiff's failure to accommodate claim is based on the argument that she was never given a modified schedule as requested in her January 2015 application for FMLA leave. Defendant argues that Plaintiff's request for intermittent FMLA leave does not constitute a request for a reasonable accommodation under the ADA. ECF No. 52-1 at 21. Defendant further argues that even if Plaintiff's request did qualify as an ADA reasonable accommodation request, Plaintiff cannot show Defendant refused to make such accommodation. *Id.* The Court agrees with Defendant.

To establish a *prima facie* case for failure to accommodate under the ADA, a plaintiff must show:

> (1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [plaintiff] could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations.

*Wilson v. Dollar General Corp.*, 717 F.3d 337, 245 (4th Cir. 2013). Assuming *arguendo* that Plaintiff's FMLA request constitutes a reasonable accommodation request under the ADA, Plaintiff here has satisfied the first two elements of her *prima facie* case. She had a disability within the meaning of the statute and Defendant knew of her disability. However, Plaintiff does not provide evidence to support the third or fourth prongs.

A reasonable accommodation is one that "enables [a qualified] individual with a disability...to perform the essential functions of [a] position." 29 C.F.R. § 1630.2(*o*)(1)(ii). Plaintiff fails to demonstrate how a reduced schedule of four hours of work per day, three to five days a week, would enable her to perform the essential functions of her job. This is especially vital

17

since at the time, Defendant was requiring all call center employees to sign up for "potentially 1-4 hours" of overtime each week. ECF No. 56-7 at 2. According to a letter sent to Plaintiff, these additional hours were implemented because Defendant was continuing to "struggle with meeting [their] service levels across multiple products" and that "missing these service levels create[ed] a poor experience for [their] Clients' and increase[d] the potential for [the] company to be charged penalties by [the] Distribution Partners." *Id.* The reduced schedule requested by Plaintiff would severely limit the number of weekly hours worked and Plaintiff does not offer evidence as to how she would have been able to adequately perform her job. "An employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform *all of* the essential functions of her position." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir.2015) (emphasis in original).

Further, Plaintiff cannot satisfy the fourth prong of a *prima facie* case because she lacks evidence showing that Defendant refused to make reasonable accommodations for her disability. On January 26, 2015 and August 4, 2015, Plaintiff's requests for FMLA leave were granted and recertified, respectively. ECF No. 1 at 5 ¶¶ 20, 21. However, Plaintiff argues that because her schedule was never proactively reduced, Defendant failed to accommodate her request.

> Q: And given this approval, can you tell me how or why you believe that First Data failed to accommodate this request for a reduced schedule?
>
> A: Because every day, I went in and checked my schedule and it wasn't reduced.
>
> Q: Did you share that with anyone that you were still on the schedule?
>
> A: Dawn Rowe multiple times.
>
> Q: And what did she say when you shared that with her?

> A: I told her - - I don't know what time it was I said to her, but she told me while my physical therapy was goin' on to just go ahead and whenever I had to leave for physical therapy, to call Workforce Management and they would...go in and schedule my physical therapy. So she told me I was to call them when I left for physical therapy and then call 'em when I got back from physical therapy.

ECF No. 52-4 at 67. According to Plaintiff, during her intermittent leave period, she was permitted

days off and days of reduced hours when necessary. *Id.* at 69-70. Plaintiff argues however, that a

reduced schedule would have made it easier for her to schedule appointments.

> Q: Okay. So you - - your - - just so I understand it, your position is that the company didn't grant your request for time away from work on an intermittent basis or reduced - - reduced basis because they actually left you on the schedule?

> A: My position is they never actually reduced my schedule, so I can't pick which days and which hours I actually wanna work and just show up for those days and hours.

> Q: But they did say if you need to be off because you have physical therapy or because your condition's flaring up, just call Workforce Management and don't come in.

> A: No. Dawn told me to do that for the physical therapy. The physical therapy was scheduled. I told her it was scheduled. I said, I've already scheduled it. If you go ahead and get my schedule reduced, I'll try to make it because if...you look at the approvals of the [leave] management, time off and stuff, we're supposed to schedule doctor's appointment and stuff outside of our normal work hours, then you know, reduce it to four hours. There was no way I could schedule it so that it didn't interfere with work. Does that make sense?

> Q: I - - I understand what you're testifying to.

> A: Okay. Well, what I am trying to say to you. Because they did not say, okay. You have Monday, Wednesday, and Friday's off. That's your three days per week. Then I could've scheduled my going to my doctor and said okay. I need my physical therapy for Monday, Wednesday, and Friday. They never did that.

> Q: But to be clear, they said if you needed to go to physical therapy, you should just go. Call Workforce Management and go.

> A: ...Correct.

> Q: All right. So whether you were on the schedule or not, nobody said you couldn't have that time?
>
> A: Not for physical therapy correct.

*Id.* Plaintiff believed that the terms of her FMLA leave only permitted her to schedule appointments outside of work. However, according to documents sent to Plaintiff by Defendant's Leave Management team, "employees on an intermittent leave of absence: must *attempt* to schedule doctor's appointments during non-work hours." ECF No. 52-8 Ex. 8. (emphasis added). The record lacks any evidence showing that Plaintiff was required to schedule appointments when there was no conflict with work. She was able to leave during work to attend her physical therapy sessions without a negative impact on her attendance. *Id.* Additionally, she expressed that she was able to secure appointments outside of work hours, "normally, the way they set up my - - I would be at work, and then my physical therapy would happen in the afternoon or in the evening." Id. at 66-67. Accordingly, the evidence demonstrates Defendant never prevented Plaintiff from scheduling or attending her appointments during work hours nor did they prevent Plaintiff from taking leave when her symptoms became unmanageable.

Plaintiff also maintains that the reduced schedule was to prevent her from sitting for eight to ten hours to help her injury heal, in accordance with her doctor's suggestion. *Id.* at 70. Plaintiff's argument that Defendant refused to accommodate this request again fails. Plaintiff stated that because Defendant did not provide her with a modified schedule, "I [couldn't] pick which days and which hours I actually [wanted to] work and just show up for those days and hours." *Id.* at 69. However, this is contradicted by both Plaintiff's own statements and record evidence.

In the paperwork approving Plaintiff's FMLA leave, Defendant acknowledges that "[t]he health care provider has indicated that you may need time off to care for yourself, within the following parameters: 4 hours per day, 3-5 days per week." ECF No. 52-8. The evidence thus

shows that Defendant approved Plaintiff to take this time off as needed. Further, Plaintiff acknowledged that she was able to take time off on days when the pain from sitting became unbearable.

> Q: Okay, so after you'd been approved for this leave, was there every any day where you had worked four hours per day on the schedule and you said, I - - I can't work anymore so I'm gonna go tell Dawn Rowe I've had enough. I'm gonna just - - I'm not - - I - - I gotta go. Pursuant to my FMLA intermittent leave, I'm telling Workforce Management I gotta go today and I'm - - I'm not working?
>
> A: Not four hours. I did leave one day. I just stood up and put on my coat. She was across the room and she came walking towards me and asked me if I was okay. And I said, no. I'm going home.
>
> Q: And what did she say?
>
> A: Nothin'.
>
> Q. On any day where you were on the schedule, did you ever - - and you felt like it's just too uncomfortable to work today, you know, I - - I really - - I - - I just can't come in, did you ever call Dawn and say, I can't come in. I'm taking this as my - - under my approved intermittent leave?
>
> A: Well, February the 11th.

ECF No. 52-4 at 73-74.

"An employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested." *Reyazuddin v. Montgomery Cty., Maryland,* 789 F.3d 407, 415 (4th Cir. 2015). Permitting Plaintiff to take time within the parameters of her requested reduced schedule is an example of an alternative reasonable accommodation. Plaintiff does not provide any examples of times when Defendant refused to let her leave work due to pain or an appointment. Plaintiff essentially contends that because Defendant did not indicate in her schedule that she was permitted to leave on an as-needed basis, that Defendant violated the ADA and failed to accommodate her disability. This argument is without merit. The evidence indicates

that Defendant approved Plaintiff's request for intermittent leave twice, permitted her to leave during work hours for physical therapy appointments, and never denied her the ability to leave on days her pain became unmanageable. Accordingly, Defendant's Motion for Summary Judgment is GRANTED.

## C. Defendant's Motion to Strike

In addition to its reply, Defendant filed a Motion to Strike certain Plaintiff's exhibits. ECF No. 62. Defendant points to Exhibits 1, 3, and 10-17—all filed as part of Plaintiff's Response in Opposition (ECF No. 56)—as either contradictory, unauthenticated, hearsay, and/or irrelevant. ECF No. 62-1 at 5. Even the broadest, most favorable reading of these exhibits, however, do not sufficiently support Plaintiff's claims of discrimination or failure to accommodate. Because Defendant has prevailed in its summary judgment motion without the Court considering Plaintiff's questioned exhibits, the Court will DENY Defendant's Motion to Strike as moot.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, the Court finds that, in the light most favorable to Plaintiff, there is insufficient evidence from which a jury could find in Plaintiff's favor on her discrimination or failure to accommodate claims. Therefore, Defendant's Motion for Summary Judgment (ECF No. 52) is GRANTED. Defendant's Motion to Strike (ECF No. 62) is DENIED as moot. A separate order will follow.

Date: April 2021

A. David Copperthite
United States Magistrate Judge